21CA0306 Peo in Interest of BJ 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0306 Jefferson County District Court No. 20JV84 Honorable Ann Gail Meinster, Judge The People of the State of Colorado, Appellee, In the Interest of B.J., a Child, and Concerning G.J., Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE GROVE Navarro and Pawar, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee Gina G. Bischofs, Guardian Ad Litem Brad Junge, Office of Respondent Parents’ Counsel, Grand Junction, Colorado, for Appellant
1 ¶ 1 In this dependency and neglect proceeding, G.J. (father) appeals the juvenile court judgment terminating his parent-child legal relationship with B.J. (the child). We affirm. I. Background ¶ 2 In February 2020, the Jefferson County Division of Children, Youth and Families filed a dependency and neglect petition and assumed temporary custody of the four-month-old child. The Division asserted that father, the child’s mother, and father’s seventeen-year-old daughter were all using methamphetamine in the hotel room that they shared with the child. In addition, the child had cigarette ashes on her clothing, appeared to be very hungry, and tested positive for methamphetamine. ¶ 3 The juvenile court initially allowed the child to remain in the care of mother’s friend and her husband. However, a couple of months later, the court authorized the Division to move the child to the home of a paternal cousin and his wife. After the cousin and his wife were unwilling to continue caring for the child, the Division placed the child in a foster home. 
2 ¶ 4 Meanwhile, based on father’s admission, the court adjudicated the child dependent and neglected. It also adopted a treatment plan for father. ¶ 5 Later, the Division moved to terminate the legal relationship between father and the child. Following a hearing in January 2021, the juvenile court terminated father’s parental rights. II. Termination Criteria and Standard of Review ¶ 6 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change in a reasonable time. § 19-3-
604(1)(c), C.R.S. 2021; People in Interest of C.H., 166 P.3d 288, 289 (Colo. App. 2007). ¶ 7 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. A determination of the proper legal standard to be applied in a case and the application of 
3 that standard to the particular facts of the case are questions of law that we review de novo. M.A.W. v. People in Interest of A.L.W., 2020 CO 11, ¶ 31. ¶ 8 However, we will not disturb the court’s factual findings and conclusions when they are supported by the record. Id. at ¶ 32; see also A.M., ¶ 15. Indeed, the credibility of the witnesses as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from it are within the discretion of the juvenile court. People in Interest of C.A.K., 652 P.2d 603, 613 (Colo. 1982). III. Less Drastic Alternative ¶ 9 Father contends that the juvenile court erred by rejecting the less drastic alternative of granting an allocation of parental responsibilities (APR) to the family friend who initially cared for the child. In support of his contention, father asserts that the court declined to hear evidence concerning the APR and failed to make findings as to whether it was a viable less drastic alternative. He also argues that the APR would meet the child’s needs and preserve his bond with the child while allowing him to continue to engage in substance abuse treatment. We are not persuaded. 
4 A. The Legal Framework ¶ 10 When considering termination under section 19-3-604(1)(c), the court must consider and eliminate less drastic alternatives to termination. People in Interest of M.M., 726 P.2d 1108, 1122 (Colo. 1986). This determination is implicit in, and thus intertwined with, the statutory criteria for termination. People in Interest of L.M., 2018 COA 57M, ¶ 24. As a result, it is influenced by a parent’s fitness to care for his or her child’s needs. People in Interest of A.R., 2012 COA 195M, ¶ 38. ¶ 11 And, as with all termination criteria, the court must give primary consideration to the child’s physical, mental, and emotional conditions and needs. § 19-3-604(3); A.M., ¶ 20. Thus, the court may consider whether an ongoing relationship with the parent would be beneficial or detrimental to the child and the child’s need for permanency when determining whether there is a viable alternative to termination. L.M., ¶ 29. Indeed, the primary and controlling issue in termination proceedings is the determination of what will serve the child’s interests and welfare. A.M., ¶ 20. 
5 B. The Court’s Ruling ¶ 12 To start, father correctly points out that the juvenile court declined to hear evidence concerning the possibility of an APR to the family friend. The caseworker testified that the Division had considered the family friend as a placement option at the beginning of the case. But, the court did not allow father to ask the caseworker why the Division was no longer considering an APR to the family friend and, instead, directed father to raise that issue in argument. ¶ 13 Father then raised the possibility of granting an APR to the family friend in his closing argument. Despite father’s argument, the court did not expressly address an APR to the family friend when determining that there was no less drastic alternative to termination. ¶ 14 Even so, we discern no basis for reversal. The less drastic alternative analysis considers whether any placement, short of termination, would be in the child’s best interest. A.R., ¶ 44. And, here, the court determined that an APR would not be an appropriate alternative to termination because father had no relationship with the child. 
6 C. The Record ¶ 15 The record supports the court’s determination that father had failed to maintain a relationship with the child. The caseworker made a referral for father to have parenting time with the child at the beginning of the case, but father failed to follow through with that referral. After the caseworker made a second referral, father did not stay in contact with the agency supervising parenting time. As a result, father did not see the child until May 2020. ¶ 16 Once father began participating in parenting time — via video visits — he often failed to engage the child and instead would just walk around in the background. And father had not attended any parenting time after the end of June 2020 — more than six months before the termination hearing. ¶ 17 The record further reveals that father admitted that he had been using methamphetamine for twenty years and had recently started using heroin. Although father completed the paperwork to have an intake appointment for a substance abuse evaluation, he did not follow through with the appointment. And he did not otherwise engage in substance abuse treatment. Nor did father provide any urinalysis tests throughout the case. 
7 ¶ 18 Finally, the caseworker opined that termination was in the child’s best interests. She explained that the child was very young and needed the stability of a permanent home. The caseworker also testified that the child would not benefit from having an ongoing relationship with father. ¶ 19 Given this record, we will not disturb the court’s determination that there was no less drastic alternative to termination. IV. Conclusion ¶ 20 The judgment is affirmed. JUDGE NAVARRO and JUDGE PAWAR concur.